UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER MANUEL, | Case No. SA CV 05-6448-PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

I.

INTRODUCTION

Plaintiff brings this action, challenging the decision by defendant Social Security Administration ("the Agency") denying his application for Supplemental Security Income ("SSI"). He asks the Court to reverse the Agency's decision and award benefits, or, in the alternative, to remand the case to the Agency for further proceedings. For the reasons discussed below, the Agency's decision is AFFIRMED.

II.

FACTS

A. <u>Plaintiff's Personal History and Work History</u>

Plaintiff was born on February 7, 1963, and was 41 years old at the time of the hearing. (Administrative Record ("AR") 37, 161.) He completed eleventh grade. (AR 49.) He had previously worked in construction, but had no work experience in the fifteen years preceding his alleged onset date. (AR 40-43.) Plaintiff contends that he became unable to work as of January 1, 2000, due to his mental condition. (AR 37, 46-47.) He reported that his ability to work was impaired by paranoia and hearing voices, and that he would "go into a state." (AR 46.)

B. <u>Plaintiff's Medical Condition and Treatment</u>

The record indicates that as early as March 2003, while Plaintiff was incarcerated, he was receiving psychiatric treatment and medication. (AR 113-14.) Records from visits with a psychiatrist and a psychologist while incarcerated indicate that while Plaintiff had a flat or blunt affect, his condition was stable and he was having neither auditory or visual hallucinations, nor suicidal or homicidal ideations. (AR 80-114.) After his parole, Plaintiff continued to seek psychiatric treatment from Parole Outpatient Clinic psychiatrist Rachel Mathai. (AR 79, 146-47, 152-59.) Dr. Mathai's treatment records indicate that Plaintiff's mental condition remained stable on medication, that he was compliant with his medication, and that he was showing progress. (AR 154.)

A treatment summary completed by Dr. Gary Chase on December 14, 2004, indicated that Plaintiff's response to treatment was "excellent," and that, although his condition was lifelong, he was

stable on medications.  (AR 142.)  Dr. Chase also completed a mental functional capacity assessment, noting moderate or marked limitations in all categories.  (AR 143-45.)  According to statements made by Plaintiff's counsel at the time of the administrative hearing, Dr. Mathai was unavailable to complete the treatment summary and assessment of mental functional capacity, so those forms were completed for Dr. Mathai by Dr. Chase and Plaintiff's social worker.  (AR 167-69.)  There is no indication in the record that Dr. Chase ever examined Plaintiff.

Plaintiff was examined on May 4, 2004, by consultative psychiatrist Dr. Ernest Bagner, III.  (AR 115-18.)  Dr. Bagner reported that Plaintiff stated that he had mood swings and memory and concentration problems and that he heard voices when he was not on medication.  (AR 115.)  Dr. Bagner noted that Plaintiff said he felt "good" and denied suicidal or homicidal ideation.  (AR 117.)  He further noted that Plaintiff demonstrated normal speech, "tight" thought processes with no flight of thought, average intelligence, orientation to person, place, and time, normal contact with reality, and fair insight and judgment.  (AR 117.)  Dr. Bagner diagnosed Plaintiff with a mood disorder, right shoulder pain, and possibly an anti-social personality disorder.  (AR 117.)  Dr. Bagner opined that Plaintiff would have: zero to mild limitations in interactions with others, maintaining attention and completing simple tasks; mild limitations handling work stresses and completing a work week without interruption; and mild to moderate limitations completing complex tasks.  (AR 118.)  Dr. Bagner also found that Plaintiff would significantly improve after six months of psychiatric treatment.  (AR 118.)

1    A non-examining state agency doctor, Dr. C.H. Dudley, completed a
2 mental residual functional capacity assessment form, indicating that
3 Plaintiff had moderate limitation in the ability to remember,
4 understand, and carry out detailed instructions, but that he retained
5 the ability to understand, remember, and carry out simple
6 instructions, to get along with others, and to adapt to routine
7 workplace changes.  (AR 119-21.)

C.   The Administrative Proceedings

9    Plaintiff filed an application for SSI on March 9, 2004.  (AR 37-
10 39.)  That application was denied on initial review.  (AR 12, 18-22.)
11 Thereafter, Plaintiff requested a hearing before an administrative law
12 judge ("ALJ"), which was granted, and a hearing was held on March 8,
13 2005.  (AR 23, 32-35, 161.)

14    At the hearing, Plaintiff testified that his medication "keep[s]
15 [him] stable" and prevents him from hearing voices, and that he had no
16 physical limitations.  (AR 172-73.)  He testified that he would have
17 problems if he went off his medications, but that he had continued
18 medication and psychiatric treatment since his parole.  (AR 172.)  He
19 testified that he took naps because his medications made him drowsy.
20 (AR 175.)  Plaintiff also testified that he had always been in special
21 education classes in school.  (AR 174.)  Plaintiff explained that he
22 now lived on his own, and that he did not like being around crowds of
23 people.  (AR 171, 174.)

24    The ALJ asked vocational expert Jeanine Matildi whether there
25 were jobs available for a hypothetical claimant with the following
26 characteristics: moderate limitation in the ability to understand,
27 remember, and carry out detailed instructions; ability to understand,
28 remember, and carry out simple instructions; and the ability to get

1  along with others and adapt to routine change in the workplace.  (AR
2  175.)  She testified that such an individual would be able to perform
3  certain unskilled jobs.  (AR 175-76.)  Plaintiff's attorney presented
4  an alternate and much more restrictive hypothetical, including marked
5  limitations in various functions, as indicated in Dr. Chase's
6  assessment form.  (AR 176-77.)  The vocational expert testified that
7  such an individual would not be able to maintain employment.  (AR
8  177.)

9      The ALJ issued a decision denying Plaintiff's application for DIB
10 on January 28, 2005.  (AR 12-16.)  The ALJ analyzed Plaintiff's claims
11 under the Agency's five-step sequential evaluation process.  At step
12 one, he found that Plaintiff had not engaged in substantial gainful
13 activity since his alleged onset date.  (AR 12-13.)  At step two, he
14 found that Plaintiff had a probable non-specific psychosis, and a non-
15 specific mood disorder, but that there was no evidence of any ongoing
16 physical impairment.  (AR 13.)  At step three, he determined that none
17 of the impairments alone or in combination met or equaled a Listed
18 impairment.  (AR 13.)

19     The ALJ analyzed the medical evidence regarding Plaintiff's
20 mental condition, noting that Plaintiff had been treated for
21 depression, mood swings, and psychotic symptoms.  (AR 13.)  He also
22 noted that the treatment records indicated that Plaintiff's symptoms
23 were well-controlled with medication, and that Dr. Chase had remarked
24 that Plaintiff's response to treatment was "excellent."  (AR 13.)
25 Emphasizing the contradiction between Dr. Chase's assessment of
26 moderate and marked limitations on one hand, and the mild limitations
27 indicated by Plaintiff's treatment records, the reports completed by
28 the consultative psychiatrist and non-examining state agency doctor,

1  and Plaintiff's own testimony, the ALJ gave no weight to Dr. Chase's
2  functional capacity assessment.  (AR 13.)  The ALJ concurred with Dr.
3  Dudley's less restrictive functional capacity assessment.  (AR 14.)
4      At step four of the analysis, the ALJ assumed that Plaintiff was
5  unable to perform past work.  (AR 14, 15.)  At step five, based on the
6  testimony of the vocational expert and the application of the medical-
7  vocational guidelines (the "Grids"), the ALJ found that there were a
8  significant number of jobs that Plaintiff could perform and that he
9  was therefore not disabled.  (AR 14, 15-16.)
10     Plaintiff requested that the Appeals Council review the ALJ's
11 decision.  On May 23, 2005, the Appeals Council denied Plaintiff's
12 request for review.  (AR 5-7.)  Plaintiff then filed the instant
13 Complaint.
14                                  III.
15                                ANALYSIS
16     Plaintiff argues that the ALJ erred by failing to give proper
17 weight to the mental functional assessment form completed by Dr.
18 Chase.  (Joint Stipulation ("JS") 4-6.)  For the following reasons,
19 the Court disagrees.
20 A.   Standard Of Review
21     "Disability" under the regulations is defined as the inability to
22 perform any substantial gainful activity due to any "medically
23 determinable physical or mental impairment which can be expected to
24 result in death or which has lasted or can be expected to last for a
25 continuous period of not less than 12 months."  See 42 U.S.C.
26 § 423(d)(1)(A).  The Court may overturn the ALJ's decision that a
27 claimant is not disabled only if the decision is not supported by
28 substantial evidence or if the decision is based on legal error.

1 | *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)(quoting *Green
2 | v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).  "Substantial
3 | evidence" is such "relevant evidence as a reasonable mind might accept
4 | as adequate to support a conclusion."  *Magallanes*, 881 F.2d at 750.
5 | It is "more than a mere scintilla but less than a preponderance."
6 | *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  This Court must
7 | uphold the ALJ's conclusion even if the evidence in the record "is
8 | susceptible to more than one rational interpretation."  *Andrews v.
9 | Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

10 | B.   <u>The ALJ Did Not Err In Discounting Dr. Chase's Mental Assessment
11 |      Form</u>

12 |      The ALJ rejected the mental assessment form completed by Dr.
13 | Chase, in which Dr. Chase opined that Plaintiff had at least moderate,
14 | and, in most cases, marked limitations in all areas of functioning.
15 | (AR 13, 143-46.)  The ALJ rejected this opinion because he believed
16 | that the form was unsigned, and because the opinion was contradicted
17 | by treatment notes and by the opinions of consultative examiner Dr.
18 | Bagner and state agency physician Dr. Dudley.  (AR 13-14.)

19 |      As an initial matter, Plaintiff argues that technically the form
20 | was signed, as it was apparently attached to the treatment summary
21 | form signed by Dr. Chase and Plaintiff's social worker.  (JS at 4; AR
22 | 142.)  The Court agrees.  Nevertheless, the Court finds that the ALJ's
23 | apparent error was harmless, as the other reasons set forth in his
24 | decision provided an adequate basis for his rejection of the
25 | assessment.

26 |      Although a treating physician's opinion is generally afforded
27 | more weight in disability cases than a non-treating physician's
28 | opinion, it is not binding on an ALJ.  *Tonapetyan*, 242 F.3d at 1148.

The ALJ "need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes*, 881 F.2d at 751 (internal quotations omitted); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). To reject the *uncontroverted* opinion of a treating physician, an ALJ must set forth clear and convincing reasons for doing so. *Magallanes*, 881 F.2d at 751. "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may *itself* be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)(emphasis added). If, on the other hand, the nontreating source relies on the same findings as the treating source, the ALJ must provide specific and legitimate reasons for disbelieving the treating source. *Id.*

The Court finds that in Plaintiff's case the ALJ provided specific and legitimate reasons for disregarding Dr. Chase's assessment form. Having set forth a thorough summary of the facts in the record pertaining to Plaintiff's mental condition, the ALJ noted that the assessment given in Dr. Chase's form was contradicted by Dr. Chase's own assessment of Plaintiff's condition on the same date. (AR 13, 142.) On that date, Dr. Chase found that Plaintiff's response to medication was "excellent," and that he was "[s]table on anti-psychotics and mood stabilizers." (AR 142.)

While the ALJ did not highlight this fact, the Court also concludes that Dr. Chase was not actually Plaintiff's treating physician. In fact, it appears that Dr. Chase may never have even

examined Plaintiff, and Plaintiff's lawyer admitted at the hearing that Dr. Chase completed the form at issue only because Plaintiff's treating psychiatrist, Dr. Mathai, was on vacation. (AR 167-68.) The Court finds it curious that Plaintiff argues so vehemently that Dr. Chase had the insight of a treating physician and completed the form based upon "his own treatment notes" without offering any evidence that Dr. Chase ever treated Plaintiff. (JS at 8-9.) With only Dr. Mathai's records at his disposal, Dr. Chase would have been in no better position than a non-treating state agency doctor to opine on Plaintiff's condition.

As the ALJ did point out, Dr. Mathai's treatment notes were also inconsistent with Dr. Chase's dire assessment, and indicated that Plaintiff's condition was stable. (AR 13.) The most recent treatment notes indicated that Plaintiff denied suicidal or homicidal ideation, auditory hallucinations, paranoid delusions, depression, and mood swings. (AR 153.) Dr. Mathai's notes also indicated that Plaintiff was "very compliant" with his treatment plan, and had shown good progress. (AR 154.)

Plaintiff attempts to rebut the ALJ's reasoning, selectively referring to older records from before he started psychiatric treatment (JS at 9, AR 150), and records from 2003, indicating that he had mood swings and paranoid delusions. (AR 9-10, 147.) As the ALJ noted, however, the most recent records indicated that Plaintiff had made progress. (AR 13, 154.) Beginning in February 2004, Dr. Mathai's records indicate that Plaintiff denied mood swings and paranoid delusions. (AR 153-59.)

The ALJ also rejected Dr. Chase's check-the-box form because it was inconsistent with the opinions of Dr. Bagner and Dr. Dudley. (AR

13-14.)  As the ALJ noted, Dr. Bagner reported that Plaintiff felt "fine," and that he demonstrated tight thought processes, no flight of thought, looseness of association, thought blocking, distractability, hallucinations, or delusions.  (AR 14.)  Dr. Bagner opined that Plaintiff would have only a few mild or moderate limitations in mental activities on the job, particularly with respect to complex tasks, and would improve within six months.  (AR 13, 118.)  Dr. Dudley's opinion included similar limitations on the ability to understand, remember, and carry out detailed instructions.  (AR 13-14, 119.)  The rejection of Dr. Chase's opinion based, in part, on Dr. Dudley's findings was proper.  *See Morgan v. Apfel*, 169 F.3d 595, 602 (9th Cir. 1999).

The Court also rejects Plaintiff's argument that the ALJ erred by failing to contact Dr. Chase because he found Dr. Chase's opinion inconsistent with the medical evidence.  (JS at 5-6.)  It is true that the ALJ has an affirmative duty to fully and fairly develop the record in a social security case.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  However, only ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct a further inquiry or gather additional information.  *Id.; see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)(finding no duty to develop where the ALJ did not make a finding that the medical report was inadequate to make a disability determination).  The ALJ did not find that the evidence was ambiguous or that there was inadequate evidence to evaluate Plaintiff's claims.  To the contrary, the ALJ noted that the evidence was clear that Plaintiff's condition was stable on medication.  (AR 13-14.)  Accordingly, the ALJ did not err in not contacting Dr. Chase for further information.

IV.

CONCLUSION

For the reasons set forth above, the decision of the Agency denying Plaintiff's claim for SSI is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

DATED:    May  25 , 2007.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

O:\ECF Ready\Manuel_05_6448_Memo opinion_Ord.wpd